Next case on our call today is agenda number 19, number 130626, People of the State of Illinois v. Kendall Cecil Morgan. Counsel for the appellant, are you prepared to speak? I am, your honor. May it please the court, counsel. Good morning, your honors. Ross Allen, representing appellant Kendall Cecil Morgan. We are here to discuss the standard of review for pretrial detention hearings. In particular, hearings where the parties proceed solely by proffer. Both parties agree that Mr. Morgan's case is now moot because he pled guilty and is no longer being held pretrial. But both parties also agree that this court should apply the public interest exception because the standard of review is a frequently reoccurring question of great public importance. Now, to the standard of review. This court should follow its century-old tradition of reviewing de novo where the circuit court considered only documentary evidence. Since 1886, this court has reviewed cases de novo where the evidence was solely documentary. This court should continue that tradition in the pretrial release context when the parties proceed solely by proffer. The same underlying justification is still present. Reviewing courts are in the exact same position as the court below. The state wants this court to reverse this longstanding practice, but they don't have a single Illinois case in support. Instead, they point to other jurisdictions that don't have the same tradition, history, or specifically past statutes mandating a death-rential review, something our legislature has not done. The state also tries to distinguish pretrial detention hearings from this court's 138-year tradition by claiming reviewing courts are not similarly situated because the circuit court can determine whether a silent defendant will comply with conditions by just looking at them. But someone's appearance, be it their skin color, hairstyle, makeup, or clothing, are irrelevant to any of the required findings at a pretrial detention hearing. Counsel, what about a situation where you're in a pretrial hearing and the accused is obstinate or uncooperative, maybe even vocal, causing a problem in the courtroom? Does that change what the standard of review should be? If they are speaking up or acting in a way that is preventing the court from conducting their business, I do think that can be considered. And then the circuit court needs to make a record of that in either its written finding under 6.1H1 or in its oral pronouncement. And then on review, what is the standard of review? Based on that, it would be under the manifest weight of the evidence because the state faces a burden of proof and a standard of proof of clear and convincing evidence. And this court has a long history where there is evidence or testimony, I guess, live testimony before the court in reviewing those findings under the manifest weight of the evidence. So your position is that de novo review is required when it is strictly just proper? Right. That's the only instance where that's required. Yes. But the reason why this needs to be addressed in the pretrial detention context is because the vast majority of pretrial detention hearings proceed solely by proffer. Outlined in the opening brief due to a rough case study of the first decisions issued in 2024, I believe it was 92 percent, 23 out of the first 25. Everybody proceeded by proffer. There are moments where they do testify. And then we should be deferring to those credibility determinations. In particular, you know, testimony. In particular, you know, when people are speaking. And then you can kind of judge their credibility. You know, obviously, that we heard earlier this week issues about manifest weight of the evidence. And the case that we heard earlier this week, the idea being if the state presents evidence of a criminal history background, makes a proffer of what the facts of this new case are, the state has no other evidence. They have not been able to do any other investigation. That's all they rely on. And then the third element of the decision about detention, this idea of are there less restrictive means, there's a lot of discussion in this room earlier this week. The state probably can't develop that evidence on their own. It's kind of in a vacuum for the state. And yet the court has to make a decision on that. When we look at the court's decision. So the court has to make a decision on something more than just the proffer. I think that's what was agreed to earlier this week. Has to make a decision on this third element on something more than just the proffer of the facts of the case and the criminal history background. So if that's true, where does the court get that? And how do we review how the court analyzes all these different pieces? In other words, it was kind of conceded earlier that the court can make a decision under the statute to detain beyond just the evidence of the proffer. Okay. So I'm not making that concession today. The statute makes clear that the state is required to prove by clear and convincing evidence. Which at pretrial detention hearings is almost always by proffer or looking at the criminal history report. I think it's called a pretrial investigation report. And so that is what this court and that is what the legislature has mandated that circuit courts look at in making those three determinations. The law is clear that there is no difference between those findings of whether or not the proof is evident or the presumption is great that they committed the offense. Or the dangerousness or willful flight standard or the conditions element. It all goes to that evidence that the state presents at the hearing. Or what the defense presents, too, because the defense may present evidence that they are likely to comply with conditions. There may be instances where it presents the opposite. But either way, the courts are assessing the evidence as it goes to their version of clear and convincing evidence. And in the context of this court's 138 year history, where the proceedings are done purely with documentary evidence, this court, the appellate court, are in the exact same position as the circuit court to make that determination. If I could just close that loop, though. What documentary evidence was there presented that there were no conditions that could mitigate the risk? So in this case, I believe there was a document from the police detailing. I'm not sure if it was signed by the state's attorney or not, but it was detailing the facts of the offense. And then the state's attorney, I believe, made a statement that was very similar to that document, but I believe in this case it added a few more. About the facts of the case? Yes. So there was no documentary evidence introduced here on that third element of whether or not there are any conditions that could mitigate risk? So there was, right? So there was by the, you know, I think the state would argue that they would point to the criminal history report regarding that, you know, his prior offenses and whether or not complying with some of the different sentences or impositions of like probation. But then the defense also put forth evidence that Mr. Morgan had been recently diagnosed with bipolar disorder. And that, you know, a recent diagnosis suggests that, you know, if that was properly treated, that could mitigate the risk that he posed to the community. So those, that evidence still goes to conditions. It's for this, it's for the court who is reviewing it to make kind of that determination of whether or not the state has met its burden by clear and convincing evidence, which is, you know, which is a sizable burden. It's not, you know, just, you know, you know, so it is still, there is still evidence on conditions and any suggestion that it's just, you know, a general assessment not based upon evidence, that, that, that, that I believe the statute contradicts that. There is nothing about these proffers, you know, be it the state summary from their petition or a later recitation by one of these attorneys that requires this court to defer to the circuit court's judgment. It is the exact same page or two of cursory facts. The circuit court is almost never hearing testimony or assessing the demeanor or credibility of a witness. If they are hearing testimony, the parties agree reviewing of those findings should be on the manifest way of the evidence. Just as this court has reviewed for decades in Addison, Cleden, Radojic, State Bank of Clinton, Riso, Aspen, Russell, Dowling, and Oaks, this court should review this documentary evidence, proffers, de novo. Counsel, has any appellate court adopted the de novo standard in any of these cases? No appellate court has. Two, two justices in the first district have adopted it, Justice Ellis and Justice Ocasio, but there has been an extensive debate on the issue, right? So a lot of them have come down different ways. The fourth, in this case, came down in favor of abuse of discretion. The second, third, and fifth go with a bifurcated approach. And then the first district has, within itself, has even more different approaches to review. Have some courts also used a hybrid approach? Yes. Where manifest evidence is used with a couple and then abuse of discretion for the third factor? Yes. That is what one of the panels in the first district, possibly two panels in the first district, have adopted. Others have decided that it is the, all three elements are reviewed under the manifest weight, and then the overall detention decision was reviewed for an abuse of discretion. And then another panel in the first reviewed it all under the manifest weight standard. This court should not lose sight, though, of the danger of implicit bias and how de novo review can help prevent someone from being detained pretrial based upon how they look instead of based upon the evidence. The state suggests we should defer to the circuit court because they can view a non-testifying defendant based upon their demeanor. But how a silent defendant looks is simply irrelevant to the pretrial detention decision. But isn't that a factor that, Demeter, a factor that we use all the time in terms of credibility? We say over and over again the reviewing courts were not in the courtroom. They didn't see what happened. They didn't get a sense of the dynamics, didn't get a sense of the person. We say that all the time in, for example, credibility decisions. Are you saying we shouldn't hold fast to that rule? So that rule is for when someone is testifying, when someone is a witness. And so, sure, if someone is testifying, if someone is a witness, they are able to assess the credibility and demeanor of that defendant. But if they are sitting there silently, we should not provide deference to the circuit court to make a judgment about a person based upon how they look or how any kind of mannerisms or nonverbal tics that they may have. Instead, defendants should be detained based upon the evidence before the court, be it what the state presented, be it what the defendant presented. It will help ensure that people are detained based upon that evidence, not simply based upon how they look. Also, in the pretrial detention context, I think it's even more important because of the risk of implicit bias, because of the brevity of these hearings. There have been numerous studies that are outlined in the briefing that show that brevity and kind of that short, intuitive, impressionistic assessment can be more easily impacted by that implicit bias in a short hearing. The state doesn't contest that in their briefing. Studies show that implicit bias is largely automatic and operates quickly. Studies show that black and Hispanic men get higher average bail amounts. We should make sure that we are reviewing all of these detention hearings based upon the evidence and not providing deference. The standard that you propose, DeNovo, how does that protect against the implicit bias of the members of the reviewing court? Well, I mean, the reviewing courts are reviewing simply the evidence. They aren't necessarily going to or as likely to be impacted by implicit bias by just looking at the documents. I will acknowledge that implicit bias can seep into everyone in any part of society. So it is still a potential risk. But higher courts are higher courts for a reason. They have more experience. They have generally practiced at the circuit court level before. And so they are able to kind of review these documents and kind of take it away and have more time without that quick brevity of the 15 or 20-minute hearing to make an assessment based on just the evidence, not any kind of implicit bias that they may not be aware of. There are no further questions. I will reserve the remainder of my time for rebuttal. Thank you. Counsel. Counsel Cleopoli. Thank you, Your Honor, and may it please the court. I'm Assistant Attorney General Eric Levin. I'm here with the people of the state of Illinois. Although the Pretrial Fairness Act made many changes to the pretrial detention statute, it did not expressly or implicitly exempt pretrial detention orders from the usual standards of appellate review. That makes the issue presented here fairly straightforward. Because the statutory criteria that must be established to deny pretrial release present questions of fact, deference is owed to the trial court's reasonable resolution of those questions under the Manifest Weight Standard. Every panel of the appellate court, and indeed all but two justices of the appellate court that have considered this issue, have rejected the arguments for de novo review that the defendant presents here. These justices disagree only on the largely academic question of which deferential standard of review should apply, a manifest weight or abuse of discretion. But they are in agreement that de novo review is inappropriate. This court should affirm that consensus against de novo review and hold that a trial court's findings that the statutory criteria for pretrial detention, whether they have or have not been established, is subject to the review on appeal under the Manifest Weight Standard. I think in the briefing, the defendant essentially made three overarching arguments for de novo review. And I think it's important to recognize that I think my opposing counsel made two fairly significant concessions today. The first is I think he's conceded that the statutory criteria for pretrial detention do present questions of fact, not law. And I think that concession is implicit in the recognition that he made today that if there had been live testimony presented, the Manifest Weight Standard would apply. If these were legal questions, we would all agree that they're de novo, same if they were mixed questions of law and fact. Any legal aspect of the decision would be reviewed de novo. It's only if these are factual questions that we even consider the Manifest Weight Standard. So I think it's fairly apparent, and I think the parties agree, that these are factual questions. The issue then becomes, is there any reason to review these factual findings de novo rather than under the traditional standard that applies to fact-finding, which is the Manifest Weight Standard? And here, I think, again, we can separate this out into two arguments. There's one argument that was presented in the briefing that would essentially apply to all pretrial detention orders, regardless of how the evidence is presented. And those are the arguments that the important liberty interests are involved, that there's implicit bias. These factors apply regardless of whether it's live evidence presented or proffers. And I think, again, there's been a concession here that those arguments just don't really carry the weight that the defendant put on them in the briefing. Again, if the importance of the liberty interest involved, if the potential for pretrial inherent bias justified de novo review, it would make no sense to say it only justifies de novo review when the evidence has been presented by proffer rather than live testimony. But why should the situation be any different than in other circumstances where we've determined that even though there was a requirement that evidence or facts were presented but not done by live testimony, so you eliminate the need to do any credibility determination, we have said that that is in the purview of de novo review. One of the cases, Addison v. Fay, that specifically this court said that where there was no live testimony and everything was done by proffer, why is the trial court in any better position to determine the outcome than a reviewing court in this court? Yes, Your Honor, I acknowledge and I think this is the remaining issue that's at play here. Is there a reason to apply de novo review in the pretrial detention cases where the evidence is presented only by proffer? And here we acknowledge that under this court's precedent, most recently in the Addison case that you mentioned, the court has held that the usual rule of deferential review of factual findings doesn't apply where the evidence presented is only documentary because in those cases, the trial court is not in a better position than the appellate court to make factual findings. We of course in the briefs argue that we think this overlooks other important justifications for deferential review of factual findings, but I don't think the court even has to get there in this case. In the pretrial detention context, that presumption at the heart of the Addison rule that trial courts and appellate courts are equally well situated to make factual findings based on documentary evidence simply doesn't hold. And I think here it's important to recognize that in these cases, the trial court will be able to observe and interact with the defendant in a way that the appellate court simply won't. But why is the silence and silent observation of a defendant something that should impact a trial court's decision? We're not talking about a witness, we're talking about just simple observation of a human being. Well, Your Honor, I want to be perfectly clear. We're not saying that the defendant's appearance or hairstyle or skin color or any superficial consideration like that has any place in the pretrial detention context. What we're saying here is that factors about the defendant's demeanor in the courtroom, his attitude, his conduct, is he being obstreperous? I think Justice Holder White made a very good point, and I think my opponent again made a fairly significant concession in acknowledging that if the defendant had been obstreperous in the courtroom, if he interrupted the proceedings, if any... I'm talking about a situation where none of that happens. Because in those situations, clearly, the court should make note of it, should reference it if they're using it in their determination. I'm talking about a situation where an individual is just sitting, and by their mere presence, why should that be so important that we should not be able to review the same information? Well, Your Honor, in a case like that, I mean, and our argument here goes both ways. In a case like that, the trial court may very well view the defendant's demeanor as something in the defendant's benefit, in his favor. Might come to the conclusion that he's more likely to comply with release conditions. Again, these are things that we think are within the purview of the trial court to be making, not the appellate court. The trial court just has access to much more information, and especially with respect to the second and third factors. And I think the third factor in particular, the question of are there any release conditions that could reasonably mitigate the threats, either of flight or safety, that the defendant poses? And these are predictive judgments that the trial court has to make. And certainly, the observations or interactions the trial court judge has with the defendant won't be the only thing that's considered. It might not even be the most important thing the court considers. But it is one thing that the court considers, and it might shape the way it looks at all the other evidence. And as I say, it might adhere to a defendant's benefit. It might not. It depends on what those facts are. But I think it's an unworkable standard to say, to look at these on a case-by-case basis and say, well, if there had been relevant demeanor or attitude or behavior incidents in the courtroom, well, then the appellate court will review things deferentially. But if there hadn't been, then reviews de novo. I mean, I think the standard is fairly unworkable. It's unworkable, I think, just in general to say that the manner in which the evidence presented decides the standard of review question. It invites gamesmanship. Either party could easily get around that by simply calling a witness to testify rather than presenting things by proffer. But the General Assembly recognized that the nature of these proceedings are best served by allowing the parties to present evidence through, you know, reliable proffers of information. And at the end of the day, we want to make sure the trial court has all the information that it can to make this very important decision. But none of that's new, is it? I mean, for well over 100 years, we've determined that if you do present live testimony, then the standard of review changes. I mean, what is so different about this that we should change the way we review a case and the manner in which there is a review? Well, Your Honor, I have two responses to that. The first is we do make the argument that we think the Addison rule, as I'll call it, is wrong and that the court should reconsider that. But I don't think the court has to go there in this case because, as I say, the pretrial detention context is fundamentally different. And I'll take Addison as an example. And I think a lot of the other cases where the court has applied this rule are similar. Addison was an insurance coverage dispute. The question before the court was whether an accident where two boys had tragically died due to a nuisance created by a landowner, whether that had been one occurrence or two for purposes of insurance coverage. And that presented sort of a clear-cut, just factual, historical finding of fact. Did these boys meet their demise at the same time? Were there intervening circumstances, et cetera? So what did happen? The question in the pretrial detention context, especially the second and third criteria, are forward-looking. Does the defendant present a high likelihood of flight, or does he pose a real and present threat to the safety of the community or any particular person? And then even more so, are there any conditions of release that could mitigate those threats? And I think a very important consideration there is how likely is the defendant to comply with any conditions that are imposed? Those are still factual questions, but they're of a different type. There are different kinds of factual questions. Let me finish with that for a minute, because that's a very interesting argument that you're making, that this is very different than an insurance debt case, or just generally, that a trial, we're looking at trying to determine what happened. You're saying this is ‑‑ we're trying to dream into the future of what will happen. Yes. You have abandoned abusive discretion, and I want to pursue that, why you're saying that, where you have, as we've heard, you know, this whole week, there are certain aspects of the trial court's decision that's not based on, for example, a cold record, the number of convictions, how many witnesses. We've talked about that there are some decisions that the court has to make that's beyond that, in terms of, let's say, looking into the future and how to mitigate risk. So how do we think about that kind of decision‑making? Is the trial court really making that predictive judgment based on facts, or is it an issue of judgment by the court that is determined by abusive discretion? Your Honor, first, I do want to point out, as I think I mentioned earlier, ultimately, this is largely academic, because both the manifest weight standard and the abusive discretion standard require deference to reasonable determination. So whether we consider them facts or judgment calls, I don't think it would really affect much at the end of the day, but I do think this is an important doctrinal question, and I think the better answer is that these are factual findings. I'll concede that especially the third factor, you know, are there conditions of release that could mitigate threats? I think that's the one factor where I think the strongest argument could be made, that it's more discretionary. But again, at the end of the day, I think, you know, I think in raising ‑‑ Wait a second. Wait a second. Here are the facts of this case. Here's the criminal history background. That's really all we know about this person, all the trial judge knows about the person. Yes. And the judge has called upon to make a determination of dangerousness. How does the court do that? What facts, fact finding is that? Well, here, so the court here heard the ‑‑ and so let me step back a second. The statute directs the trial court to consider a list of factors, the nature and circumstances of the offense, the weight of the evidence against the defendant, the history and characteristics of the defendant, and that includes a long list of factors, family ties, employment, age, physical and mental condition. And it also asks the court to look at, was the defendant on any form of supervised release at the time he committed these offenses? And so we have all of that evidence that was presented here. We have the assistant state's attorney made a proffer of the evidence, the factual circumstances of the case. We had evidence of the defendant's criminal background, and we had the public safety assessment, which scored him as a fairly high risk of committing a violent offense on release. And I think the most important factor here was the PSA, the public safety assessment report, and, and this is what the trial court said, the fact that the defendant was on probation at the time he committed this offense. He was already subject to sort of the same types of conditions that would probably be imposed if he had been granted pretrial release here, and he had shown himself unable or unwilling to comply with those conditions. There's also the fact that he had pending charges against him, one of which involved an assault against the same victim. These are things that, these are, these are, this is information and evidence that's before the court that the trial court will then, should and will consider in making the assessment, making this predictive judgment. As I say, the court could say that, well, that's a judgment call that's subject to the abuse of discretion standard. It could also say, and what we argue it should say, is that those are factual findings, forward-looking to be sure, but factual findings, as in In Re DT, the case that this court decided involving termination of parental rights, where the trial court has to make a finding of what is in the child's best interests. That's a, that's a predictive, forward-looking judgment. The statute gives a number of factors for the court to consider, and this court held in In Re DT that those are factual findings. Counsel, can you point us to any cases that utilize the manifest weight of the evidence standard where only documentary evidence is presented? No, Your Honor. I'm not aware of cases that do that. In Illinois. And we can see that under Addison, and there is a long line of this court's precedent, which has held that where only documentary evidence is presented, the appellate court reviews factual findings de novo. As I said, we think that argument, or that rule, overlooks another strong argument for deferential review, which is essentially just the institutional division of labor in our legal system. You know, the legal system applies, you know, assigns primary fact-finding responsibility to the trial courts. The trial courts have much greater experience making factual findings, considering evidence. They develop an expertise. Essentially just having, allowing any party, and this will apply equally to the state and all the defendants on appeal, allowing any party dissatisfied with a trial court's factual findings to have a second bite of the apple on appeal, there's no reason to think that will increase the accuracy of fact-finding. There's no reason to think appellate court justices are better able to make factual findings than trial court judges. And it will do so at an extreme expense in terms of resource diversion. It will require appellate courts, and particularly in this context where the appellate courts have just been, you know, quite overburdened with the number of these appeals in this past year. And I know my opposing counsel cites in the brief that maybe those numbers are declining. I think if you do the math, we're still looking at a fairly substantial increase in the number of pretrial detention appeals from before the Pretrial Defender's Act went into effect. And adopting a rule that says de novo review on appeal will just encourage any dissatisfied party, be it the state or a defendant, to appeal. I think we want to reserve appellate review for those cases where there can be, there's an argument that a trial court made a legal error, abused its discretion in a manner, made an unreasonable finding of fact, and I want to stress here, the manifest weight standard is not toothless. If from counsel during your opponent's presentation he told us that implicit bias should be something that the court considers, which standard of review will remove implicit bias from the detention decision? Your Honor, to be frank, I don't think there's any standard of review that could remove implicit bias. You know, we can see that judges, like all other people, will be subject to implicit biases. There's no reason to think that the appellate court justices will be less prone to that issue than trial court judges will. The manifest weight of the evidence standard, though, asks the appellate court to look at, is there a basis in the legitimate evidence and factors to support the trial court's finding? And if there's not, if the only justification for a decision that the appellate court can find in the record would have to be bias against the defendant, that holding would not survive manifest weight review. So, again, it's not a toothless standard of review. It's also, I think the court has to look at the fact that, and I think this sort of dovetails in with the argument about the importance of the liberty interests involved. No doubt there are important liberty interests involved here, but it's the clear and convincing evidence standard of proof that protects those interests, and that standard of proof, then, is sort of incorporated into the manifest weight standard In In Re Siem, a case this court decided, another case involving the termination of parental rights, this court explained that the standard of review is whether or not the trial court's finding that certain facts have been proven by clear and convincing evidence, whether that is against the manifest weight of the evidence. So the manifest weight standard itself will take that into account, but there's really no reason to have the appellate court simply redo the factual findings from scratch with no deference to the trial court judge who's on the ground, in the courtroom, has a lot more experience in the pre-trial detention context generally, and will have more familiarity with the defendant in particular. I mean... Could you bring your remarks up? I do have one final question. I just wanted to direct you. You mentioned that you thought that the third factor was really the one that was to be fact-based. So are you saying that that is not a legal finding by the trial court, but that is actually a finding of fact? I think what's clear is it's not a legal finding. Whether there are any conditions of release that could mitigate the threats the defendant poses is not a legal question. I think there is an argument that perhaps it's a discretionary consideration. I think the better argument is that it's a factual finding. It's about making a prediction about future events. We cite a case in our brief, I think from the 11th Circuit Federal Court of Appeals, which recognized that courts often treat those types of predictions about future events as factual findings. And I think that's what this court did in In Re DT when it held that the termination of a child's best interest is a factual finding. So I think the better argument is it's a factual finding. Either way, it's subject to deferential review, whether it's on the grounds of discretion or on the grounds that it's a finding of fact. Thank you. If there are no further questions, we would ask the court to affirm the appellate court's judgment and to hold that the pretrial detention decision, whether the criteria have been met, are factual findings that are subject to review on appeal under the manifest weight standard regardless of the nature of the evidence presented. Thank you. Counsel to the appellant, and reply. May it please the court. The state began by discussing that the legislature did not change how review operated. So it should be reviewed under the usual standards. And as outlined in the briefing, the usual standards when there is documentary evidence for the last 138 years has been that the reviewing court is in the exact same position as the circuit court. And therefore, the reviewing court can review de novo. If the legislature had wanted to imply a different standard, they could have. This court could look to its reasoning in Evans v. Cook County, where the language of the statute implied that the final appeal of the order was essentially determined based upon the circuit court's discretion. It was whether or not they had met the hearing officer's satisfaction. So if the legislature had wanted to imply a more deferential review, like abuse of discretion, they could have. But instead, they outlined three elements that the state needs to prove by clear and convincing evidence. And when there is purely documentary evidence, that should be reviewed de novo. The state also focuses on this idea of factual findings that isn't the defining issue here. The facts aren't disputed when it's just proffers. The facts are the proffers. Instead, higher courts are reviewing the legal determination of the three required elements. Did the state present sufficient evidence as to those elements based upon the documentary evidence? For example, in Addison, this court did not couch their de novo review of the facts as a finding of facts. But similar to here, they analyzed that undisputed evidence to the underlying legal question, which was whether or not there were two different occurrences under the insurance policy. And that wasn't some sort of simple question. That was a question that the Circuit Court and Appellate Court had disagreed with. And they essentially then determined that the moving party had not met their burden with sufficient evidence that it was a single occurrence. Can I ask you this? Sure. Even as you brought up Addison, I was looking for this item.  Has this principle been applied in criminal cases? I say Addison's an insurance case, Clinton versus SIU health care, a series of civil cases. Has this idea of written proffer, and therefore de novo review, been applied in criminal cases? So in the documentary evidence context, yes. And that was in Radojic. Now, that was a video. But that is kind of similar. Or no, that was a, I'm sorry. I'm mixing it up with war, which is currently before this court. But in Radojic, it was a review of grand jury transcripts relating to whether or not the attorney-client privilege applied. And then also people of the Oaks in the 1990s, this court reviewed whether or not it was a coerced confession. And they did so based on a video. And then there was a transcript of that video. So essentially, it's similar. A video is like a document, right? It is something that the reviewing court or the higher court can review the same as a circuit court. And then as to demeanor, I acknowledge the state conceding that you can't judge someone based on their race or their hair color. But still, it's that demeanor of those mannerisms or nonverbal tics that also shouldn't be provided deference. And so again, as we discussed in the earlier portion, if there is something like an outburst or a refusal to comply with the circuit court, that is different. And then the circuit court needs to make a record of that because the legislature wanted a thorough review. It's why they included in 6.1H1 requiring a written finding. Don't we instruct jurors to take into consideration demeanor? So I'm not sure about that instruction, but that seems likely. But again, I think that goes back to this idea. And so they assess the demeanor of a witness, right? And so I think that's where it's different. If a defendant, they do have the right to testify at these hearings. And then you can assess their demeanor and the credibility of their statements. But just to allow a circuit court to judge someone while they're sitting there, maybe based upon how they're looking at them, that I don't think is appropriate because it allows for greater impact of that implicit bias that can be so difficult for people to identify, especially when they are the ones being biased. Then the state also talks about it being unworkable. But again, I think you need to look at the entirety of the legislative scheme and how that fits in with the appellate process, which is outlined by this court in the Supreme Court rules. This court has changed those rules on April 15th. There requires a motion for relief. You're only allowed to have one appeal at a time. So it's not like a person can appeal every single detention decision. And then also, these decisions take 100 days. So it's not like anyone's going to feel like, oh, I can just go to the appellate court while I sit in jail for 100 days. And then I think it does create a greater accuracy and consistency both ways, not just for the defendant whose liberty is restrained. But a de novo review of this documentary evidence also ensures a greater consistency that the people who may not show up for court or who may present a danger to an individual person or the community. I did a de novo review. Did the trial court err here? Yes. I think that there were conditions as to his mental health. There was no evidence that if he had received proper mental health treatments, that that could have mitigated any risk that he posed to the community or the complainant. Even though the court obviously was taking into consideration the proffer of the facts of this case and the fact that the defendant had just been released, correct? There were other factors that the court was looking at. But you're saying that under the de novo review, this court erred by detaining the defendant.  Pre-trial safety report indicated a high risk of future violent crime. The trial court was wrong about all of that. I think that the key language there is whether or not there was anything that could mitigate Morgan's purported dangerousness. And I think that mental health treatment could have mitigated his dangerousness short of the frustration. How many DUIs did he have? You know, I don't know. I think it's two. Many, right? You know, I'm... Many. I wish you could pull it off real fast. Many, many. I'll find it somewhere. But many, many. And then, I mean, I think, well, let me pull it back. Just say, your position right now is when the trial court was looking at all of the factors, this court here, looking at the trial court's decision, after being presented with all of the evidence, the trial court was wrong in this detention hearing. That's what you want us to call it. Yes.  Recognizing that they're at the end of their time, if there are no further questions, this court should hold that where the parties proceed solely by proffer, review should be de novo because the reviewing court is similarly situated and it will help ensure that people are not detained because of how they look. Thank you. Thank you both. This case, agenda number 19, number 130626, People vs. the State of Illinois, this is Kendall Cecil Morgan, will be taken under advisement. Thank you very much.